UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

Nº 11-cv-4938 (JFB) (GRB)
_____

DENISE SAM-SEKUR,

Plaintiff,

VERSUS

THE WHITMORE GROUP, LTD.,

Defendant.
_____

**MEMORANDUM AND ORDER**
June 15, 2012
_____

JOSEPH F. BIANCO, District Judge:

*Pro se* plaintiff Denise Sam-Sekur ("plaintiff" or "Sam-Sekur") brings this action against the Whitmore Group, Ltd. ("defendant" or "Whitmore") alleging violations of Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112, as well as state law claims for defamation, wrongful termination, and breach of contract. In particular, plaintiff alleges that defendant failed to promote her, failed to provide her with a salary increase, and terminated her because she was pregnant and suffered from illnesses following her pregnancy.

For the reasons set forth below, the Court dismisses plaintiff's claims under the ADA. The Court finds that plaintiff failed to timely exhaust her administrative remedies with respect to her claims that defendant failed to promote her or to give her a raise, though plaintiff's claims concerning her termination were timely exhausted. In any event, the Court finds that plaintiff's complaint does not sufficiently allege that she was "disabled" within the meaning of the ADA. In an abundance of caution, however, the Court grants plaintiff leave to replead her termination claim so that she may set forth allegations regarding how, for example, her chronic cholecystitis was linked to her pregnancy, and the duration of the illness. Furthermore, the Court grants plaintiff leave to replead her termination claim under the Pregnancy Discrimination Act, which amended Title VII of the Civil Rights Act of 1964 to prohibit discrimination "on the basis of pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000e(k).

I. BACKGROUND

A. Factual Background

The following facts are taken from the Complaint filed on October 6, 2011, ("Compl."), and are not findings of fact by the Court. Instead, the Court will assume the facts in the complaint to be true and, for purposes of the pending 12(b)(6) motion to dismiss, will construe them in a light most favorable to plaintiff, the non-moving party.

Plaintiff began working for Whitmore on December 8, 2007. (Letter from Plaintiff to the Equal Employment Opportunity Commission ("Letter to the EEOC") (June 14, 2011).[1]) She worked in the Funeral Department for Roseanne Manger ("Manger") until she was transferred in March 2008 to the General Business Department, where she was Darcy Peterson's ("Peterson") assistant. (*Id.*) Plaintiff alleges that she was promised a raise after six months of employment, provided that she had a good review. (*Id.*) Although plaintiff received a "great verbal review," she received no salary increase. (*Id.*) Plaintiff continued to "play[] the raise game" with George Custance ("Custance"), the manager of the General Business Department. (*Id.*) He claimed there was a freeze on raises due to the economy, but plaintiff alleges that the defendant nonetheless embarked on a costly renovation and gave select employees raises. (*Id.*) Later, plaintiff assumed Peterson's responsibilities when Peterson was given a different position. (*Id.*) She was again promised a raise, which she never received. (*Id.*) At that point, plaintiff knew she was pregnant, but feared that "once they knew," she would never get a raise. (*Id.*)

In January 2009, plaintiff told Peterson she was pregnant. (*Id.*) Peterson "literally screamed at me voicing her displeasure that I was pregnant, blaming me that her new position now has to be detained." (*Id.*) Plaintiff alleges that Custance told her not to tell anyone she was pregnant until after he advised the owner. (*Id.*) Plaintiff later informed the owner, Jim Metzger ("Metzger"), that she was pregnant, explaining that she had not said anything sooner because of an earlier miscarriage and because of "the raise [she] was expecting." (*Id.*) She did not receive the raise or the promotion. (*Id.*)

Plaintiff alleges that she was treated differently than three other pregnant women in the office. (*Id.*) They were all given baby showers, but plaintiff was not given a baby shower, and, while in the hospital, plaintiff received no card, flowers, or phone calls. (*Id.*) When she returned to work, plaintiff was treated like the "office pariah." (*Id.*) Peterson allegedly told "her friends in management" that plaintiff was "married having another man's baby." (*Id.*) One employee in the Funeral Department told plaintiff that Manger had said plaintiff was married and having another man's baby. (*Id.*) Plaintiff notes that this employee is willing to testify that she was promised a raise six months after employment, and "actually received it." (*Id.*)

Defendant subsequently gave plaintiff's promotion to a new hire named Diana Bertoni ("Bertoni") at a salary of $80,000 per year. (*Id.*) When plaintiff returned from leave, Bertoni became her supervisor. (*Id.*) After returning from leave, plaintiff had many medical problems. (*Id.*) In August 2010, Bertoni told plaintiff that if she was "out sick again," she could not "guarantee"

---

[1] Plaintiff's complaint is very brief. Most of the allegations are contained in the Letter to the EEOC, which plaintiff annexed to her complaint.

2

that plaintiff would be able to keep her job. (*Id.*; Equal Employment Opportunity Commission Intake Questionnaire ("EEOC charge"), June 14, 2011 (attached to Compl. at 10[2]).) As a result, plaintiff emailed Metzger to provide the exact details for why she was out of the office. (Letter to the EEOC.) According to the email to Metzger, which plaintiff attaches to her complaint, plaintiff experienced the following: a breast cancer scare on December 31, 2009; an appendectomy in March 2010; an infection from an IUD, which was removed on July 14, 2010; and an infected oral implant, which was removed on August 2, 2010. (Email from Plaintiff to James Metzger (Aug. 9, 2010).)

On June 16, 2010, plaintiff emailed Custance, again asking for a raise. (*Id.*) She received a small increase that was not retroactive. (*Id.*) On August 23, 2010, Peterson forced plaintiff to stay late in order to rewrite two canceled policies. (Letter to the EEOC.) Plaintiff had to stay until 5:30 p.m. to handle the rewrite for Peterson's customer. (*Id.*)

On October 28, 2010, two days after returning from being out sick, plaintiff was terminated. (EEOC charge.) Custance and the CFO, Geraldine Schnatz, told plaintiff that her termination was due to downsizing. (*Id.*) Plaintiff alleges, however, that at least three new hires were permitted to keep their jobs. (*Id.*) Plaintiff alleges that the basis for the adverse actions was "pregnancy and illness post pregnancy." (*Id.*)

Prior to commencing this lawsuit, plaintiff completed and filed an EEOC charge, dated June 14, 2011. Plaintiff noted in her Letter to the EEOC that she was aware that there were time constraints "on these matters," but was afraid to contact the EEOC because of fears of retaliation and/or losing her job. (Letter to the EEOC.) The EEOC charge asserts a claim for discrimination pursuant to disability and pregnancy arising from "pregnancy and illness post pregnancy." On July 11, 2011, the EEOC sent plaintiff a Dismissal and Notice of Rights ("Right to Sue Letter"). In the Right to Sue Letter, the EEOC explained that it was closing plaintiff's file because it was unable to conclude that defendant violated any statute under its jurisdiction. Plaintiff was given 90 days to file a lawsuit based on the EEOC charge. She filed this lawsuit within 90 days.

B.  Procedural Background

Plaintiff filed the complaint in this action on October 6, 2011. Defendant moved to dismiss on January 9, 2012. Plaintiff filed an affirmation in opposition on February 13, 2012. Defendant replied on February 24, 2012. The Court has fully considered the arguments and submissions of the parties.

II. STANDARD OF REVIEW

When a Court reviews a motion to dismiss for failure to state a claim for which relief can be granted, it must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This standard does not require

---

[2] Page references indicate the page numbers assigned by the ECF docketing system.

3

"heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, setting forth a two-pronged approach for courts deciding a motion to dismiss. 556 U.S. 662, 129 S. Ct. 1937 (2009). The Court instructed district courts to first "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." 129 S.Ct. at 1950. Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*.

The Court notes that in adjudicating a Rule 12(b)(6) motion, it is entitled to consider: "(1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003) (internal citations omitted), *aff'd in part and reversed in part on other grounds sub nom., Lentell v. Merrill Lynch & Co.*, 396 F.3d 161 (2d Cir. 2005), *cert. denied*, 546 U.S. 935 (2005); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("[T]he district court . . . could have viewed [the documents] on the motion to dismiss because there was undisputed notice to plaintiffs of their contents and they were integral to plaintiffs' claim."); *Brodeur v. City of New York*, No. 04 Civ. 1859 (JG), 2005 U.S. Dist. LEXIS 10865, at *9-10 (E.D.N.Y. May 13, 2005) (court could consider documents within the public domain on a Rule 12(b)(6) motion to dismiss).

### III. DISCUSSION

#### A. Failure to Exhaust Administrative Remedies

As a threshold matter, defendant contends that plaintiff failed to file a timely EEOC charge because she "knew or had reason to know of the injury serving as the basis for" some of her claims at least as early as June 2009, yet she did not file her EEOC charge within the requisite 300 days. *See Harris v. City of New York*, 186 F.3d 243, 247 (2d Cir. 1999). The Court agrees that plaintiff's claims that she was passed over for a promotion and a raise accrued, at the latest, when she returned from maternity leave, are not subject to equitable tolling, and do not fall within the "continuing violation" exception. Accordingly, the raise and promotion claims are time-barred. Plaintiff's claim that she was terminated on the basis of disability is, however, timely.

#### 1. Applicable Law

Under 42 U.S.C. § 2000e-5, which is incorporated by reference into the ADA by 42 U.S.C. § 12117(a), a plaintiff in New York has 300 days from the date of accrual to file an ADA charge with the EEOC. *See Harris*, 186 F.3d at 247-48. A claim under the ADA accrues when the plaintiff "knew

4

or had reason to know of the injury serving as the basis for his claim." *Id.* at 247.

"Termination, failure to promote, and refusal to hire are considered 'discrete acts' which are 'easy to identify' and claims based on each are barred if not timely filed." *Valtchev v. City of New York*, 400 F. App'x 586, 588, (2d Cir. 2010). There is an exception, however, for discriminatory acts that are "part of a continuing policy and practice of prohibited discrimination." *Id.* Under this "continuing violation" exception to the limitations period, if a plaintiff "files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone." *Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir. 1993), *overruled in part on other grounds by Kasten v. Saint-Gobain Performance Plastics Corp.*, 131 S. Ct. 1325 (2011). The continuing violation exception applies "to cases involving specific discriminatory policies or mechanisms," but does not apply to "multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism." *Id.*

"When determining whether equitable tolling is applicable, a district court must consider whether the person seeking application of the equitable tolling doctrine (1) has 'acted with reasonable diligence during the time period she seeks to have tolled,' and (2) has 'proved that the circumstances are so extraordinary that the doctrine should apply.'" *Zerilli-Edelglass v. N.Y. City Transit Auth.*, 333 F.3d 74, 80-81 (2d Cir. 2003) (quoting *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 512 (2d Cir. 2002)); *see also South v. Saab Cars USA, Inc.*, 28 F.3d 9, 12 (2d Cir. 1994) (noting that the principles of equitable tolling do not extend to what "is at best a garden variety claim of excusable neglect" (citation and quotation marks omitted)). The "burden of demonstrating the appropriateness of equitable tolling . . . lies with the plaintiff." *Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 2000); *see also Smith v. Chase Manhattan Bank*, No. 97 Civ. 4507 (LMM), 1998 U.S. Dist. LEXIS 14711, at *10 (S.D.N.Y. Sept. 18, 1998) ("[A] court must consider the equities of the excuse offered to explain the delay and may extend the limitations period if warranted.").

2.   Application

Defendant argues that plaintiff failed to exhaust her administrative remedies by filing an EEOC charge within 300 days of the accrual of her claim, since she knew that she had been passed over for a promotion and raise when she returned from maternity leave in June 2009,[3] yet she did not file an

---

[3] Plaintiff's complaint does not provide the exact date of her leave pursuant to the Family and Medical Leave Act ("FMLA"). Defendant attaches a letter to its motion to dismiss indicating that plaintiff was granted FLMA leave from March 23, 2009 through June 12, 2009. (Letter from Geraldine Schnatz, Office Manager, to Plaintiff (Mar. 27, 2009).) The Court may consider this letter in adjudicating a Rule 12(b)(6) motion because "plaintiff ha[d] knowledge or possession of the material and relied on it in framing the complaint." *See In re Merrill Lynch & Co.*, 273 F. Supp. 2d at 356-57. Moreover, as noted *supra*, plaintiff referred to her leave in her complaint without exact dates, and did not dispute the dates contained in the motion to dismiss. In any event, it is clear from the email attached to plaintiff's complaint that she had returned to work before August 9, 2010 and any claim alleging that defendant failed to promote or failed to provide a raise to plaintiff on the basis of discrimination due to pregnancy would have accrued as of her return from leave and would be barred by the 300-day requirement even if she returned as late as August 9, 2010.

5

EEOC charge until June 14, 2011. The Court agrees that plaintiff's claims that she was discriminated against on the basis of pregnancy when she was passed over for a raise and a promotion accrued, at the latest, when she returned from maternity leave, since "she knew or had reason to know of the injury serving as the basis for [her] claim." *See Harris*, 186 F.3d at 247.

In an addendum to her complaint, plaintiff explains that, although she is "aware that there are time constraints on these matters," she "wish[es] she would have known earlier," because she "would have contacted the EEOC sooner." (Letter to the EEOC.) Plaintiff further states, "However, I still would have been afraid of retaliation and/or losing my job." (*Id.*) Plaintiff's conclusory statement that she would have been afraid of retaliation had she filed an EEOC charge is insufficient to serve as the basis for equitable tolling. Moreover, no other basis for equitable tolling has been asserted in this case. Nor does the "continuing violation" exception apply. There is no evidence that any of the isolated acts complained of by plaintiff related to any specific discriminatory policy.

Accordingly, because plaintiff did not file an EEOC charge until June 14, 2011, plaintiff failed to timely exhaust her administrative remedies with respect to her claims that defendant failed to promote her or to give her a raise prior to her pregnancy, during her pregnancy, or when she returned from leave after giving birth. However, plaintiff's claim that she was terminated on the basis of her pregnancy and post-pregnancy illnesses was timely exhausted. Plaintiff was terminated on October 28,

---

The only alleged denial of promotion of which plaintiff complains was immediately known to her upon her return when Bertoni was her new boss.

2010, and filed her EEOC charge within 300 days of her termination.

B.   Failure to State a Claim Under the ADA

### 1. Applicable Law

The ADA was enacted by Congress to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities[.]" 42 U.S.C. § 12101(b)(1). Title I of the ADA prohibits employment discrimination. 42 U.S.C. § 12111 *et seq*. Title II prohibits disability discrimination by public entities in connection with access to public services. 42 U.S.C. § 12131 *et seq*. Title III prohibits disability discrimination by people who own, lease, or operate places of "public accommodation," such as hotels, theaters, grocery stories, and transportation centers. 42 U.S.C. § 12181 *et seq*.

Under Title I, the provision at issue, employers are prohibited from discriminating "on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Employers must make "reasonable accommodations" for qualified individuals with a disability, unless the employer can show that such an accommodation would impose an "undue hardship." 42 U.S.C. § 12112(b)(5)(A).

To establish a *prima facie* case under the ADA, a plaintiff must show that:

> (1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or

6

without reasonable accommodation; and (4) he suffered adverse employment action because of his disability.

*Giordano v. City of New York*, 274 F.3d 740, 747 (2d Cir. 2001).

The ADA defines a disability as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment (as described in paragraph (3))." 42 U.S.C. § 12102(1). With respect to an individual who is "regarded as having an impairment" under 42 U.S.C. § 12102(1)(C), the individual must establish "that he or she has been subjected to an action prohibited under this Act because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). However, paragraph (1)(C) "shall not apply to impairments that are transitory and minor. A transitory impairment is an impairment with an actual or expected duration of 6 months or less." 42 U.S.C. § 12102(3)(B).

Congress enacted the ADA Amendments Act of 2008 ("ADAAA"), effective January 1, 2009, which expanded the class of individuals entitled to protection under the ADA. As the Ninth Circuit has explained:

> In the ADAAA, Congress emphasizes that when it enacted the ADA in 1990, it "intended that the Act 'provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities' and provide broad coverage." The ADAAA rejects the Supreme Court's interpretation of the term "disability" in *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 119 S. Ct. 2139, 144 L. Ed. 2d 450 (1999), and *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184, 122 S. Ct. 681, 151 L. Ed. 2d 615 (2002), and thereby expands the class of individuals who are entitled to protection under the ADA.

*Rohr v. Salt River Project Agric. Improvement & Power Dist.*, 555 F.3d 850, 853 (9th Cir. 2009) (citations omitted). Following the amendments, major life activities no longer need to be of "central importance," and may include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).

2. Analysis

Plaintiff alleges that she was discriminated against on the basis of "pregnancy and post pregnancy illness." (Compl. at 3.) Plaintiff details these post-pregnancy illnesses in an email attached to her complaint, which she sent to Metzger on August 9, 2010. They include: a breast cancer scare on December 31, 2009; an appendectomy in March 2010; an infection from an IUD, which was removed on July 14, 2010; and an infected oral implant, which was removed on August 2, 2010. (Email from Plaintiff to James Metzger (Aug. 9, 2010).) In her opposition, plaintiff describes an additional illness. (Pl.'s Opp., Feb. 13, 2012, ECF No. 13.) She explains that she began to experience "a swelling under my right rib," for which she visited a "gastro doctor" in June 2010 and September 2010. (*Id.*) After she was terminated on October 28, 2010, the swelling "became very painful and the fevers were constant."

(*Id.*) She saw a series of doctors and was ultimately diagnosed with chronic cholecystitis, and had her gallbladder removed on May 23, 2011. (*Id.*) Plaintiff notes that the Mayo Clinic website states that "women who were post pregnancy could have this illness." (*Id.*) Defendant argues that plaintiff has failed to demonstrate that her "pregnancy and post pregnancy illness" constituted a disability within the meaning of the ADA.

a. Other Illnesses

As an initial matter, it is clear that plaintiff fails to allege a plausible disability claim based upon her breast cancer care, appendectomy, infection from an IUD, and infected oral implant. Each of these illnesses is a temporary, short-term impairment that is not "substantially limiting" and does not, therefore, render a person "disabled" under 42 U.S.C. § 12102(1)(A). *See Adams v. Citizens Advice Bureau*, 187 F.3d 315, 316-17 (2d Cir. 1999) (per curiam) (temporary neck, back, and knee injury lasting three and one-half months not a disability); *Colwell v. Suffolk Cnty. Police Dep't*, 158 F.3d 635, 646 (2d Cir. 1998) (seven-month temporary impairment was not substantially limiting); *McNamara v. Tourneau, Inc.*, 496 F. Supp. 2d 366, 376 (S.D.N.Y. 2007), *aff'd* 326 F. App'x 68 (2d Cir. 2009) (back and leg injury lasting only eight weeks was not substantially limiting); *Williams v. Salvation Army*, 108 F. Supp. 2d 303, 313 (S.D.N.Y. 2000) (temporary effects as a result of blunt head trauma did not give rise to a disability within the meaning of the ADA).

Nor do these illnesses qualify as disabilities under 42 U.S.C. § 12102(1)(C). As discussed above, to qualify as an individual who is "regarded as having an impairment" under 42 U.S.C. § 12102(1)(C), the individual must establish "that he or she has been subjected to an action prohibited under this Act because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). However, paragraph (1)(C) "shall not apply to impairments that are transitory and minor. A transitory impairment is an impairment with an actual or expected duration of 6 months or less." 42 U.S.C. § 12102(3)(B). Plaintiff's breast cancer care, appendectomy, infection from an IUD, and infected oral implant were each "transitory and minor." *See White v. Interstate Distrib. Co.*, 438 F. App'x 415, 420 (6th Cir. 2011) (plaintiff could not establish a "regarded as disabled" claim because he suffered a transitory impairment with a duration of one or two months); *Dugay v. Complete Skycap Servs., Inc.*, CV 10-2404 (PHX) (GMS), 2011 U.S. Dist. LEXIS 81829, at *12 (D. Ariz. July 26, 2011) (three month-long disability resulting from car accident was "transitory and minor," and therefore did not qualify the plaintiff as disabled).

For these reasons, plaintiff fails to qualify as disabled under the ADA as a consequence of her breast cancer scare, appendectomy, infection from an IUD, or infected oral implant.[4]

---

[4] Under 42 U.S.C. § 12102(1)(B), a person qualifies as disabled if he has "a record of such an impairment." The EEOC regulations further explain that "[a]n individual has a record of a disability if the individual has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k); *see Colwell*, 158 F.3d at 645 ("Even without a showing of substantial limitation of a major life activity, the ADA's definition of 'disability' can be satisfied by 'a record' of an impairment that substantially limits one or more major life activities.") Because this Court concludes that plaintiff does not

b. Pregnancy

i. Applicable Law

Pregnancy does not typically constitute a disability under the ADA. *See Leahy v. Gap, Inc.*, Civ. 07-2008, 2008 U.S. Dist. LEXIS 58812, at *14 (E.D.N.Y. July 29, 2008) ("'Every court to consider the question of whether pregnancy in and of itself is a 'disability' within the meaning of the ADA has concluded that it is not.'" (quoting *Green v. New York City Health and Hosp. Corp.*, 04 Civ. 5144 (PAC), 2008 U.S. Dist. LEXIS 2832, at *14-15 (S.D.N.Y. Jan. 15, 2008), *aff'd* 343 F. App'x 712 (2d Cir. 2009)); *see also Dantuono v. Davis Vision, Inc.*, No. 07-CV-2234 (TCP)(ETB), 2009 U.S. Dist. LEXIS 122119, at *12 (E.D.N.Y. Dec. 29, 2009) (inability to lift more than ten pounds as a result of pregnancy was temporary, and therefore not a disability).

Moreover, courts generally hold that complications arising from pregnancy do not qualify as disabilities under the ADA. *See Conley v. United Parcel Serv.*, 88 F. Supp. 2d 16, 19 (E.D.N.Y. 2000). For example, in *LaCoparra v. Pergament Home Ctrs., Inc.*, 982 F. Supp. 213, 228 (S.D.N.Y. 1997), a woman who was granted a nine-month leave of absence for complications stemming from her pregnancy was not considered disabled. In *Tsetseranos v. Tech Prototype Inc.*, 893 F. Supp. 109, 119 (D.N.H. 1995), a pregnant plaintiff who missed several days of work because of ovarian cysts was not disabled.

Only in extremely rare cases have courts found that conditions that arise out of pregnancy qualify as a disability. In these cases, "it is the physiological impairment that results from complications that renders the person disabled." *Conley*, 88 F. Supp. 2d at 20. For example, in *Hernandez v. City of Hartford*, 959 F. Supp. 125, 130-31 (D. Conn. 1997), the premature onset of labor that could only be controlled by medication constituted a physical impairment, though there were genuine issues of material fact as to whether the impairment substantially limited plaintiff's ability to work. In *Patterson by Patterson v. Xerox Corp.*, 901 F. Supp. 274, 278 (N.D. Ill. 1995), the court held that the plaintiff sufficiently alleged a disability where she suffered severe back pain from pregnancy, in part because the pregnancy aggravated a prior back injury.

ii. Application

The complaint as it is currently drafted is insufficient to state a plausible claim under the ADA based upon pregnancy or pregnancy-related illness, given the lack of specificity as to whether plaintiff suffered illnesses that were linked to her pregnancy, and the duration of those illnesses.

In particular, plaintiff has not alleged how her pregnancy substantially limited a major life activity. Moreover, as discussed *supra*, temporary impairments, pregnancies, and complications arising from pregnancy are not typically considered disabilities. Plaintiff has not sufficiently alleged any physiological impairments as a consequence of her pregnancy that have rendered her disabled. Accordingly, based upon the current allegations in the complaint, plaintiff's pregnancy does not render her disabled under 42 U.S.C. § 12102(1)(A).

Nor does plaintiff's pregnancy render her disabled under 42 U.S.C. § 12102(1)(C)

---

sufficiently allege an impairment that substantially limited a major life activity under 42 U.S.C. § 12102(1)(A), and plaintiff does not allege that there were records relied on by her employer indicating a greater degree of limitation than she alleged in her complaint, plaintiff fails to qualify as disabled under 42 U.S.C. § 12102(1)(B) with respect to all of her claims. *See Colwell*, 158 F.3d at 645.

because she has not sufficiently alleged that she was regarded as having such an impairment. Although an individual need not demonstrate that her impairment was perceived by others to limit a major life activity, an individual must still demonstrate that she has an impairment. Pregnancy by itself, however, is not generally considered an impairment. *See Marchioli v. Garland Co., Inc.*, 5:11–cv–124 (MAD/ATB), 2011 U.S. Dist. LEXIS 54227, at *19-20 (N.D.N.Y. May 20, 2011); *Serednyj v. Beverly Healthcare LLC*, 2:08–CV–4, 2010 U.S. Dist. LEXIS 38221, *39 (N.D. Ind. Apr. 16, 2010), *aff'd* 656 F.3d 540 (7th Cir. 2011). Moreover, as discussed *supra*, plaintiff has not alleged any physiological impairment as a result of her pregnancy that could conceivably fall within one of the extremely rare cases in which courts have found that conditions that arise out of pregnancy qualify as a disability.

Accordingly, the Court grants defendant's motion to dismiss plaintiff's claim of discrimination under the ADA on the basis of her "pregnancy and illness post pregnancy." However, in an abundance of caution, the Court grants plaintiff leave to replead to provide the plaintiff the opportunity to set forth allegations regarding how, for example, her chronic cholecystitis was linked to her pregnancy, and the duration of the illness. In her opposition, plaintiff asserts that she suffered from chronic cholecystitis, and that the Mayo Clinic website states that "women who were post pregnancy could have this illness." (Pl.'s Opp., Feb. 13, 2012, ECF No. 13.) However, plaintiff did not make these allegations in her complaint,[5] and her opposition does not sufficiently state how this illness was linked to her pregnancy and the duration of the illness. Thus, the Court grants plaintiff leave to replead her termination claim so that she may set forth allegations regarding how, for example, her chronic cholecystitis was linked to her pregnancy, and the duration of the illness. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Furthermore, the Court grants plaintiff leave to replead her claims under the Pregnancy Discrimination Act, which amended Title VII of the Civil Rights Act of 1964 to prohibit discrimination "on the basis of pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000e(k).

IV. LEAVE TO REPLEAD

The Second Circuit has emphasized that

> A *pro se* complaint is to be read liberally. Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.

*Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quotations and citations omitted). Under Rule 15(a) of the Federal Rules of Civil Procedure, the "court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a). However, leave to replead can be denied where it is clear that no amendments can cure the pleading deficiencies and any attempt to replead would be futile. *See Cuoco*, 222 F.3d at 112 ("The problem with [plaintiff's] cause[] of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied."); *see also Hayden v. Cnty. of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999) (holding that if a plaintiff cannot demonstrate he is able to amend his complaint "in a manner which would

---

[5] The Court notes that plaintiff checked "I do not have a disability now but I did have one" in her EEOC charge dated June 14, 2011, annexed to her complaint.

survive dismissal, opportunity to replead is rightfully denied").

As discussed *supra*, the Court grants plaintiff leave to replead her termination claim so that she may set forth allegations regarding how, for example, her chronic cholecystitis was linked to her pregnancy, and the duration of the illness. Furthermore, the Court grants plaintiff leave to replead her termination claim under the Pregnancy Discrimination Act, which amended Title VII of the Civil Rights Act of 1964 to prohibit discrimination "on the basis of pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000e(k).

V. CONCLUSION

For the foregoing reasons, defendant's motion to dismiss plaintiff's complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, is granted. However, in an abundance of caution, the Court grants plaintiff leave to replead her termination claim to address how, for example, her chronic cholecystitis was linked to her pregnancy, and the duration of the illness. Furthermore, the Court grants plaintiff leave to replead her termination claim under the Pregnancy Discrimination Act, which amended Title VII of the Civil Rights Act of 1964 to prohibit discrimination "on the basis of pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000e(k).[6] Plaintiff may file an amended complaint within thirty days of the issuance of this Order. Failure to file an amended complaint will result in dismissal of the complaint with prejudice.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith; therefore, *in forma pauperis* status is denied for purposes of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: June 15, 2012
Central Islip, NY

\* \* \*

Plaintiff is proceeding *pro se*, 122 Rocklyn Ave., Lynbrook, NY 11563. Defendant is represented by Felicia S. Ennis, Jonathan W. Rich, and Ronald B. Goodman, Robinson, Brog, Leinwand, Greene, Genovese & Gluck, PC, 875 Third Avenue 9th Floor, New York, NY 10022 and 1345 Ave. of the Americas, 31st Floor, New York, NY 10105.

---

[6] Because it is still unclear whether any federal claim can survive a motion to dismiss, the Court declines at this juncture to exercise jurisdiction over any of plaintiff's state law claims.

11