UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**Denise Sam-Sekur**

_____

_____

NAME OF PLAINTIFF(S)

v.

The Whitmore Group, Ltd.

_____

_____

NAME OF DEFENDANT(S)

**F I L E D**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ **JAN 29 2013** ★

2nd Amended LONG ISLAND OFFICE
**COMPLAINT**

CASE # 2:11 CV 043938 (JFB)(GRB)

This action is brought for discrimination in employment pursuant to (check only those that apply):

☐ Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166) (race, color, gender, religion, national origin).
**NOTE:** _In order to bring a suit in federal district court under Title VII, you must first obtain a right to sue letter from the Equal Employment Opportunity Commission._

☐ Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 - 634 (amended in 1984, 1990, and by the Age Discrimination in Employment Amendments of 1986, Pub. L.  No. 92-592 , the Civil Rights Act of 1991, Pub. L. No. 102-166).
**NOTE:** _In order to bring a suit in federal district court under the Age Discrimination in Employment Act, you must first file charges with the Equal Employment Opportunity Commission._

☑ Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 - 12117 (amended by the ADA Amendments Act of 2008, Pub. L. No. 110-325 and the Civil Rights Act of 1991, Pub. L. No. 102-166).
**NOTE:** _In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a right to sue letter from the Equal Employment Opportunity Commission._

**RECEIVED**

-1-

JAN 2 9 2013

PR� ⁓⁓ SE OFFICE

Jurisdiction is specifically conferred upon this United States District Court by the aforementioned statutes, as well as 28 U.S.C. §§ 1331, 1343.  Jurisdiction may also be appropriate under 42 U.S.C. §§ 1981, 1983 and 1985(3), as amended by the Civil Rights Act of 1991, Pub. L. No. 102-166, and any related claims under New York law.

1.  Plaintiff resides at:

## 122 Rocklyn Ave. , Lynbrook

Street Address

| Nassau | NY | 11563 | 516-426-6856 |
|---|---|---|---|
| County | State | Zip Code | Telephone Number |

2.  Defendant(s) resides at, or its business is located at:

## 370 Old Country Rd. Ste. 200

Street Address

| Nassau | Garden City | NY | 11530 |
|---|---|---|---|
| County | City | State | Zip Code |

3.  The address at which I sought employment or was employed by the defendant(s) is:

## 370 Old Country Rd. Ste. 200

Street Address

| Nassau | Garden City | NY | 11530 |
|---|---|---|---|
| County | City | State | Zip Code |

4.  The discriminatory conduct of which I complain in this action includes
    *(check only those that apply).*

    ☐      Failure to hire.

    ☑      Termination of my employment.

    ☐      Failure to promote.

    ☑      Failure to accommodate my disability.

    ☑      Unequal terms and conditions of my employment.

    ☑      Retaliation

    ☑      Other acts *(specify):* **FMLA Retaliation** .

**NOTE:**  *Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court.*

5.  It is my best recollection that the alleged discriminatory acts occurred on:
    1/2009- 10/2010 .
    Date(s)

6.  I believe that the defendant(s) *(check one)*

    ☐      is still committing these acts against me.

    ☑      is <u>not</u> still committing these acts against me.

7.  Defendant(s) discriminated against me based on my:
    *(check only those that apply and state the basis for discrimination, for example, what is your religion, if religious discrimination is alleged)*

    ☐ race _____  [ ] color _____

    ☐ gender/sex _____  [ ] religion _____

    ☐ national origin _____

    ☑ disability **Pregnancy & Post Pregnancy Illness** _____

    ☐ age.  If age is checked, answer the following:

    I was born in _____.  At the time(s) defendant(s) discriminated against me,
    I was ☐ more ☐ less than 40 years old.  *(check one)*.
            Year

-3-

**NOTE:** *Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court.*

8. The facts of my case are as follows:

I am filing a 2nd amended complaint because I would like to assert the following:

Disability-2008 ADA amendment, making it easier for plaintiffs to prove that they are disabled.

In addition, I am also adding an FMLA claim as it pertains to my ongoing sickness along with having to treat my baby's asthma, which she still has to this very day.

George Custance, Geraldine Schnatz (CEO,HR & Payroll), and Diana Bertoni, along with my co-workers were all well informed that I was still NOT well and that my daughter was

diagnosed with Asthma. This all took place before and AFTER my 1 year return to Whitmore. I was not offered FML, even though I fit the criteria, as I was offered the first time when I was pregnant.

These are qualifying conditions that would warrant taking FML, but instead the defendant chose to terminate my employment 2 days after being out while I was waiting for a medical supply company

to deliver my daughters nebulizer, in order to treat my daughter's Asthma.

Had I been under the FMLA, my employment would have been protected. This is why I can justify this as retaliation.

(Please see attached letter of explanation along with more medical documentation.)

*(Attach additional sheets as necessary)*

**NOTE:** *As additional support for your claim, you may attach to this complaint a copy of the charge filed with the Equal Employment Opportunity Commission, the New York State Division of Human Rights, or the New York City Commission on Human Rights.*

9. It is my best recollection that I filed a charge with the New York State Division of Human Rights or the New York City Commission on Human Rights regarding defendant's alleged discriminatory conduct on: _____.
Date

10. It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission regarding defendant's alleged discriminatory conduct on: in writing on 6/14/2011 _____.
Date

-4-

**Only litigants alleging age discrimination must answer Question #11.**

11.    Since filing my charge of age discrimination with the Equal Employment Opportunity

Commission regarding defendant's alleged discriminatory conduct *(check one)*:

☐    60 days or more have elapsed.

☐    less than 60 days have elapsed.

12.    The Equal Employment Opportunity Commission *(check one)*:

☐    has <u>not</u> issued a Right to Sue letter.

☑    has issued a Right to Sue letter, which I
      **received on** <u>July 14th 2011</u>                .
                                    Date

**NOTE:**    Attach a copy of the Right to Sue Letter from the Equal Employment Opportunity
            Commission to this complaint.

        WHEREFORE, plaintiff prays that the Court grant such relief as may be appropriate,
including injunctive orders, damages, costs, and attorney's fees.

PLAINTIFF'S SIGNATURE

Dated: <u>January 28th 2013</u>

## 122 Rocklyn Ave.

Address
Lynbrook, NY 11563

## 516-426-6856

Phone Number

rev. 5/1/12

ComplaintUnderTitleVII,ADAorADEAEDNY.rev.5/1/12
                                -5-

EEOC Form 161 (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

To: **Denise Sam-Sekur**
**122 Rocklyn Ave**
**Lynbrook, NY 11563**

From: **New York District Office**
**33 Whitehall Street**
**5th Floor**
**New York, NY 10004**

☐ On behalf of person(s) aggrieved whose identity is
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| | **Thomas Perez,** | |
| **520-2011-02598** | **Investigator** | **(212) 336-3778** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.

On behalf of the Commission

Enclosures(s)

**Kevin J. Berry,**
**District Director**

7-11-11

*(Date Mailed)*

cc:     **Director**
**Human Resources**
**THE WHITMORE GROUP, LTD**
**370 Old Country Road, Suite 200**
**Garden City, NY 11530**

**Denise Sam-Sekur**
122 Rocklyn Ave.
Lynbrook, NY 11563
516-426-6856

January 28, 2013

Honorable Joseph F. Bianco
Eastern District Court
100 Federal Plaza
Central Islip, NY 11722

*2nd Amended Complaint*
*Case # 2:11-CV-04938(JFB)(GRB)*

Dear Honorable Joseph F. Bianco:

Enclosed please find my 2nd amended complaint, as discussed during the 12/19/12 conference.
My FMLA claims relates-back to my original Complaint because they are derived from the
same course of conduct: and my employer's hostility towards my serious health conditions and
my absences from work that were caused by these health conditions.

I believe that the defendant violated my FMLA rights by (1) retaliating against me by firing me
for taking off time due to serious medical conditions, and (2) interfering with and denying me
leave time that I needed because of serious medical conditions. The FMLA guarantees eligible
employees who work for covered employers, as Whitmore has more than 50 employees, to take
12 weeks of job-protected unpaid leave each year to recover from a serious health condition, or
to take care of a family member with a serious health condition. I took 12 weeks of FMLA leave
for the birth of my daughter from March 22, 2009 until June 15, 2009. Because the FMLA only
provides for 12 weeks of leave a year, I was not eligible for additional leave until June 15, 2010.
On or about June 15th 2010, I was eligible for FMLA leave again. The FMLA also provides that
an employer may not retaliate against me or terminate my employment because I needed to take
time off due to a series of medical condition or to care for a family member with a serious
medical condition. 29 C.F.R. §§ 825.220(a), (c). The employer is required to give me notice of
my FMLA rights, if I provide them with sufficient information such that they should know that I
am suffering from a series of medical condition as well as my daughter suffering from Asthma.
Diana Bertoni, the ladies in my department and George Custance were well aware of my
daughters sickness. In turn they advised Geraldine Schnatz, our Human Resource Director, as
she does our payroll.

My employer retaliated against me and interfered with my rights under the FMLA because after
June 15, 2010 (when my FMLA rights returned) I repeatedly informed my employer that I as
well as my new daughter, suffered from serious medical conditions: an IUD infection that would
have required hospitalization if not treated,[1] fevers and stomach pains that were the result of
the chronic cholecystitis that I was later diagnosed with,[2] and an infected oral implant that
would have resulted in a period of incapacity of more than three days in the absence of medical
intervention.  I also informed my employer that my daughter had been diagnosed with serious
asthma, a qualifying chronic condition under the FMLA that entitled me to take leave when my

daughter's asthma required my care.[3] However, while I informed my employer of these qualifying health conditions,[4] my employer never informed me that I had a right to take time off under the FMLA. Specifically, I missed work on July 15th and 16th of 2010 in connection with my infected IUD, and I had to work from home on August 4th and 5th of 2010 because of my infected oral implant, which I can prove because I saved and printed all of the emails from those two days. Instead of informing me of my rights under the FMLA to take those days off, my employer told me in August 2010 that if I missed any more work that I would be fired. I then wrote an email to the owner of Whitmore, giving further explanation of my your serious medical conditions that had caused me to miss work. My daughter was not diagnosed with Asthma until September of 2010, so I was not able to put that in my email to Mr. Metzger, as it did not take place as of yet. AS I REALIZE THAT THE IUD AND THE DENTAL MATTERS WERE DEEMED INCIDENTAL AT THE 12/19/12 CONFERENCE, PLEASE TAKE INTO CONSIDERATION THAT I HAD APPENDICITIS IN MARCH OF 2010 AND HAD MY APPENDIX REMOVED ON APRIL 7TH 2010. WHO WOULD HAVE THOUGHT THAT I HAD TWO DIFFERENT DIGESTIVE DISEASES AT THE SAME GIVEN TIME. (MY BABY WAS IN THE MIDDLE OF BOTH OF THESE ORGANS) WHEN I FELT THE SWELLING IN MY STOMACH THE NIGHT OF 3/26/2010 (POST PREGNANCY) AND HAD MY APPENDIX REMOVED SHORTLY THEREAFTER I WAS UNDER THE IMPRESSION THAT MY STOMACH PROBLEMS HAD BEEN RESOLVED. DURING MY PREGNANCY MY BABY WAS BREECH AND DECIDED TO TURN VERY LATE IN THE PREGNANCY. WE ARE NOW TALKING ABOUT A MUCH LARGER FETUS THAN NORMAL, MAKING IT'S TURN FOR DELIVERY. THIS EVENT WAS QUITE PAINFUL AND TOOK A TOLL ON MY BODY. IN FACT, I LEFT WHITMORE TO GO TO THE DOCTOR BECAUSE I WAS EXPERIENCING SO MUCH PAIN, DUE TO THE TURNING OF THE LARGER FETUS, LATER ON IN MY PREGNANCY. I CONTACTED GEORGE CUSTANCE TO ADVISE THE ABOVE SITUATION. HE SEEMED FINE WITH IT AT THE TIME. I HAD ONLY LEFT ONE OTHER TIME FOR A PREGNANCY RELATED PROBLEM. I HAD A TERRIBLE NOSEBLEED ON 2/26/09.

When I missed additional hours of work, going to a medical appointment to diagnose my stomach pains on September 1, 2010, and missing a half day on October 15th, 2010 and another Full day October 26th, 2010 to care for my daughter's chronic asthma, I was unlawfully retaliated against. On October 26th, when I explained to Diana Bertoni that my daughter's serious asthma was keeping me from coming into work because I had to wait for the delivery of a nebulizer, my supervisor said "well that's your choice" to miss work, and I was fired two days later.[5] This constitutes retaliation and/or interference in violation of the FMLA. 29 C.F.R. §§ 825.220(a), (c). The failure to provide me with the necessary leave – and to make me work when I was too sick to work and when my daughter was suffering from asthma and required my care – also is a violation of the FMLA. *Id.*

The Defendant told me that I was being fired due to downsizing, but that was not true: the Defendant hired a new employee, Marie Flood, to replace me. And shortly after I was terminated, they fired another employee (Kathy Millar) due to misconduct, and then re-hired a former employee (Pat Marchese) to replace her. If it were true that the Defendant was downsizing, they surely would not have hired new employees.(ie. Terry Grosso, Susan Tate,

Tracey Littel, Brian O'Neill, Pasquale Tartaro, Gina in Personal Lines and William Fowler) In addition, at the time of my termination, at least three new hires with much less experience were permitted to stay on as employees.

The following documents are evidence in support of my FMLA and ADA claim:

* August 9, 2010 email to James Metzger with read receipt

I treated with Dr. David Frank for pain under right rib on 6/3/10, 9/1/10, 4/1/11, 4/4/11 and 4/7/11. Changed gastric doctors on or about April 12th 2011 to Dr. Sridevi Bhumi in Garden City, NY

I HAVE ATTACHED DIAGNOSTIC REPORTS, SHOWING A THICKENING OF MY GALLBLADDER WALL, ON NUMEROUS OCCASIONS, ALONG WITH THE ENDOSCOPY REPORT PROVING THE SMALL GALLSTONES, NOT VISIBLE ON AN ULTRASOUND. ALL OF THIS LEAD UP TO THE REMOVAL OF MY GALLBLADDER. THERE IS ALSO A LETTER FROM DR. DAVID FRANK, STATING HE WOULD BE REFERRING ME TO A SURGEON.

*PATHOLOGY REPORT SHOWING CHRONIC CHOLECYSTITIS.


[1] 29 C.F.R. § 825.115(e) (a qualifying serious health condition includes "any period of absence to receive multiple treatments (including any period of recovery there from) by a health care provider . . . [for] a condition that would likely result in a period of incapacity of more than three consecutive, full calendar days in the absence of medical intervention or treatment. . .").

[2] A qualifying series health condition includes visits to a doctor when the employee has symptoms that are eventually diagnosed as constituting a serious medical condition, even if, at the time of the initial medical appointments, the illness had not yet been diagnosed. *Caldwell v. Holland of Tex. , Inc.*, 208 F.3d 671, 676 (8th Cir. 2000).

[3] 29 C.F.R. § 825.115 (A qualifying chronic serious health condition is a condition that requires periodic visits to a health care provider, continues over an extended period of time, and "[m]ay cause episodic rather than a continuing period of incapacity (e.g., asthma, diabetes, epilepsy, etc.).").

[4] "An employee seeking leave need not expressly invoke the FMLA in her notification; it is sufficient that she give a basis for her leave that qualifies under the FMLA. After the employee provides the required notice, the onus shifts to the employer to inquire further if it needs further information to ascertain whether the leave is FMLA-qualifying." *Brown v. The Pension Boards*, 488 F. Supp. 2d 395, 408-09 (S.D.N.Y. 2007) (internal quotation marks and citation omitted).

[5] I have evidence that my termination was in retaliation for me taking leave because of your employer's verbal statements that I might be fired if I took more leave, as well as the temporal proximity between my leave and my termination. *See Reilly v. Revlon, Inc.*, 620 F. Supp. 2d 524, 538 (S.D.N.Y. 2009).


Respectfully yours,

Denise Sam-Sekur
(Pro Se Litigant)

Enclosure: 2ND AMENDED COMPLAINT with attachments

Denise Sam-Sekur                                                                    Page **4**

cc: Gordon & Rees, LLP

Sam, Denise          Chart#: 20594
DOB: 03/26/1970
DOS:
Carlos A. Romero, M.D., F.A.C.S.



# WINTHROP
## University Hospital

**Department of Pathology**
259 First Street, Mineola, NY 11501
Ph: 516-663-2475
Fax: 516-663-4581
www.winthrop.org



## Surgical Pathology Report

PATIENT NAME:    **SAM, DENISE**                    ACCESSION NO:  **S11-08605**
DOB:                 AGE:   41                            MRN:   715380
SEX:    F                                              ACCT NO:   100314376
SERVICE:    ASU          LOCATION:                      ROOM:
Physicians:                                              BED:

### Ordering Physician: CARLOS  ROMERO    Ordering MD Phone: 516-741-6464

PERTINENT CLINICAL DATA: Admitting Diagnosis: Cholelithiasis; Operative Procedure: Laparoscopic cholecystectomy
PRIORS: CG07-00214  S04-12541  S06-4134  S07-05805  S09-04606

Collect date: 05/23/2011 5:03:00 PM              Receive date: 05/24/2011 8:20:00 AM

SPECIMENS:
Gallbladder

ATTENDING PATHOLOGIST: Steven Drexler, MD
GROSSED BY: Amy Kozer PA

**DIAGNOSIS:**
**Gallbladder, cholecystectomy: Chronic cholecystitis. No calculi are identified with the specimen.**

GROSS DESCRIPTION:
Received in formalin labeled with the patient's name "Sam, Denise" and designated "gall bladder" is an 8.9 x 3.0 x 2.6 cm intact gallbladder.  The serosa is smooth, glistening and moderately bile stained.  There are two metal clips located within 0.1 cm of the cystic duct resection margin (inked black); there is 0.3 cm of additional spiraling.  A periductal lymph node is not present.  The gallbladder contains green, viscous bile.  There are no calculi within the gallbladder or within the specimen container the following filtration of the formalin and bile.  The mucosa is green, velvety and bile-stained.  The wall ranges in thickness from 0.2 cm to 0.4 cm.  Representative sections are submitted in one cassette.

**Final Diagnosis performed by Steven Drexler, MD.  Electronically signed Wednesday, 5/25/2011 5:25:55PM**

ICD Codes:          575.11                    SAM, DENISE
No. of slides:      1                         MRN:715380
                    Page 1 of 1               100314376

RECEIVED MAY 26 2011

Case 2:11-cv-04938-JFB-GRB   Document 39   Filed 01/29/13   Page 12 of 22 PageID #: 331

U.S. National Library of Medicine - The World's Largest Medical Library

Home > Diseases and Conditions > Chronic cholecystitis

🔗 SHARE  ⬛ �t ⊡ ⎵          🖨 Print

PubMed Health. A service of the National Library of Medicine, National Institutes of Health.

A.D.A.M. Medical Encyclopedia. Atlanta (GA): A.D.A.M.; 2011.

# Chronic cholecystitis

### Cholecystitis - chronic

Last reviewed: February 7, 2011.

Chronic cholecystitis is swelling and irritation of the gallbladder that persists over time.

The gallbladder is a sac located under the liver. It stores bile that is made in the liver. Bile helps the intestines digest fats.

## Causes, incidence, and risk factors

Chronic cholecystitis is usually caused by repeated attacks of acute (sudden) cholecystitis. Most of these attacks are caused by gallstones in the gallbladder.

These attacks cause the walls of the gallbladder to thicken. The gallbladder begins to shrink. Over time, the gallbladder is less able to concentrate, store, and release bile.

The disease occurs more often in women than in men, especially after age 40.

## Symptoms

For symptoms of acute cholecystitis, see: Acute cholecystitis.

Acute cholecystitis is a painful condition that leads to chronic cholecystitis. It is not clear whether chronic cholecystitis causes any symptoms.

## Signs and tests

Your health care provider may order the following blood tests:

- Amylase and lipase -- to diagnose diseases of the pancreas
- Complete blood count (CBC)
- Liver function tests -- to evaluate how well the liver is working

Tests that reveal gallstones or inflammation in the gallbladder include:

- Abdominal CT scan
- Abdominal ultrasound
- Gallbladder scan (HIDA scan)
- Oral cholecystogram

## Treatment

Surgery is the usual treatment. Surgery to remove the gallbladder is called cholecystectomy.

- Laparoscopic cholecystectomy is most often done. This surgery uses smaller surgical cuts, which result in a faster recovery. Patients are often sent home from the hospital on the same day as surgery, or the next morning.
- Open cholecystectomy requires a larger cut in the upper-right part of the abdomen.

In patients who are too ill to have surgery because of other diseases or conditions, the gallstones may be dissolved with medication taken by mouth. However, this may take 2 years or longer to work, and the stones may return after treatment.

## Expectations (prognosis)

Cholecystectomy is a common procedure with a low risk.

## Complications

- Cancer of the gallbladder (rarely)

Case 2:11-cv-04938-JFB-GRB   Document 39   Filed 01/29/13   Page 13 of 22 PageID #: 332

- Jaundice
- Pancreatitis
- Worsening of the condition

## Calling your health care provider

Call for an appointment with your health care provider if you develop any symptoms of cholecystitis.

## Prevention

The condition is not always preventable. Eating less fatty foods may relieve symptoms in people with acute cholecystitis who have not had their gallbladder removed. However, the benefit of a low-fat diet has not been proven.

## References

1. Wang DQH, Afdhal NH. Gallstone disease. In: Feldman M, Friedman LS, Brandt LJ, eds. *Sleisenger and Fordtran's Gastrointestinal and Liver Disease.* 9th ed. Philadelphia, Pa: Saunders Elsevier;2010:chap 65.

Review Date: 2/7/2011.

Reviewed by: George F. Longstreth, MD, Department of Gastroenterology, Kaiser Permanente Medical Care Program, San Diego, CA. Also reviewed by David Zieve, MD, MHA, Medical Director, A.D.A.M., Inc.



A.D.A.M., Disclaimer

Copyright © 2012, A.D.A.M., Inc.

**DAVID M. FRANK, M.D., F.A.C.G**
GASTROENTEROLOGY
25 SOUTH VILLAGE AVENUE
ROCKVILLE CENTRE, NEW YORK 11570
TEL: (516) 764-2012
FAX: (516) 678-6440

April 7, 2011

Dr. Allan De Rovera
Rockville Center, NY 11570

RE: DENISE SAM

Dear Allan:

I had the opportunity to do an endoscopy of Denise on April 4, 2011 at that time the endoscopy showed some mild gastritis and bile was collected after CCK injection. Biopsies of the stomach showed mild chronic inflammation negative for H. pylori. The bile collection for crystals was positive with 15 crystals per slide. The patient continues to complain of right upper quadrant pain and sonogram in the past has been negative. CAT scan is negative except for questionable

mild thickening of the gallbladder wall. In light of her permanent symptoms, I suggest that she be seen by her regular surgeon for an opinion concerning possible laparoscopic cholecystectomy. I did recommend to the patient that we should do a colonoscopy to complete the workup in conjunction with a consultation with her surgeon.

Sincerely yours,

David M. Frank, M.D., F.A.C.G

DMF/ak

*Crystals
are small
Gallstones Not
picked up in
ultrasound*

**DAVID M. FRANK, M.D., F.A.C.G.**
**25 SOUTH VILLAGE AVENUE**
**ROCKVILLE CENTRE, NEW YORK, 11570**
**(516) 764-7012**
**GASTROENTEROLOGY**

## ESOPHAGOGASTRODUODENOSCOPY

Patient _Sam Denise_     Date _4/4/11_

Referring Doctor : _____

Indications: _____

Preparation: _____

Medication: _____

Procedure: _____

Findings: _____

Impression:
1. _____
2. _____
3. _____

Recommendations
1. _____
2. _____
3. _____

DAVID M. FRANK, M.D., F.A.C.G.

11/29/2012   13:14  5166786440                     DRDAVIDFRANK                        #5058 P.012/022
01/01/1999  00:02   7185385760                          E                                PAGE  01

LUCIUS P. TRAKMAN, M.D.
HARRY L. STEIN, M.D.

RECEIVED ___3/2__/11
REVIEWED ___3/29/11

OF

Alan De Rovira, MD
30 Hempstead Avenue, Suite N-2
Rockville Centre, NY 11570

RE:    SAM, DENISE
       #001054
       DOB: 3-26-70 (Female)
       DOE: 3-18-11
       DOT: 3-21-11

Dear Dr. De Rovira:

COMPUTED TOMOGRAPHY OF THE ABDOMEN AND PELVIS:  Computed tomography of the abdomen
and pelvis is performed in this 40-year-old patient with right upper quadrant pain.
Images were obtained from the epigastrium to the symphysis pubis following the oral
and intravenous administration of nonionic contrast material. A multislice helical
scan was performed with coronal reformatting and delayed images. Comparison was
made to prior examination dated, May 2, 2009.

Inferior Thorax:  No parenchymal or pleural masses are delineated. No pleural or
pericardial effusion is present.

Liver, Gallbladder, and Common Duct:  Water density masses are present in the
right lobe of the liver compatible with benign cysts. A less than 0.5 cm mass is
present in the inferior right lobe of the liver too small to accurately measure
the density. Mild thickening of the gallbladder wall is present which is non-
specific and may merely represent incomplete distention at this time. The common
duct is normal.

Spleen:  Homogeneous, normal in size.

Adrenal Glands:  No masses delineated.

Pancreas:  No masses delineated.

Kidneys, Ureters, and Bladder:  No renal masses, hydronephrosis or renal calculi
are demonstrated. No hydroureter. The urinary bladder appeared grossly normal.

Uterus and Ovaries:  A 1.7 x 1.7 cm water density mass is demonstrated in the right
adnexal region, compatible with a cyst. The uterus is not enlarged. The left ovary
is unremarkable. No fluid is noted in the cul-de-sac.

Lymph Nodes:  No enlarged mesenteric, paraaortic, paracaval, pelvic or inguinal
lymph nodes are demonstrated.

Bowel:  The opacified loops of bowel are unremarkable.

Aorta and Inferior Vena Cava:  Calcification of the aorta and iliac arteries is
present. The inferior vena cava is unremarkable.

Abdominal Wall and Osseous Structures:  Very minimal degenerative changes of the
spine are present. No abdominal wall masses are appreciated.

Coronal reformatting demonstrates the above findings.

Continued...

Radiological Associates of Long Island, P.C.
Diagnostic Medical Imaging of Long Island, P.C.

(516) 766-8550   Fax (516) 6-5-2M22

11/29/2012  13:15 5166788440                    DRDAVIDFRANK                        #5058 P.013/022

Page 2                                          RE)    SAM, DENISE
                                                       2001654
                                                       DOB: 3-26-70 (female)
                                                       DOS: 3-18-11
                                                       DOT: 3-21-11

IMPRESSION:
    BENIGN CYSTS OF THE LIVER.

    A LESS THAN 0.5 CM MASS IS PRESENT IN THE INTERIOR RIGHT LOBE OF THE LIVER
    TOO SMALL TO ACCURATELY MEASURE THE DENSITY.

    MILD THICKENED GALLBLADDER WALL WHICH IS NON-SPECIFIC AND MAY MERELY REPRESENT
    INCOMPLETE DISTENTION AT THIS TIME.

    CALCIFICATION OF THE AORTA AND ILIAC ARTERIES.

    RIGHT OVARIAN CYST

    MINIMAL DEGENERATIVE CHANGES OF THE SPINE.

Thank you for the courtesy of this referral.

                                                Very truly yours,


                                                Lucille P. Taverna, MD

LPT:csk-FX
STAIR

LUCILLE P. TAVERNA, M.D.*
HARRY L. STEIN, M.D.†

David Frank MD
25 S Village Avenue
Rockville Centre NY 11570

RE:  SEKUR, DENISE
      10-09-3001854
      DOB: 3-26-70 (female)
      DOS: 6-4-10
      DOT: 6-7-10

Dear Dr. Frank:

**ABDOMINAL SONOGRAPHY:**  Abdominal sonography was performed in this 40-year-old patient.

The liver is unremarkable.  There is no evidence of mass or biliary duct dilatation.  The gallbladder is elongated and septated, but no stones are identified.  The common duct is normal measuring 2 mm.

*Stones found in Bile.
See Endoscopy Report*

The aorta and inferior vena cava are unremarkable.

The right kidney is normal in size measuring 11.7 x 3.4 x 4.8 cm.  The left kidney is normal in size measuring 10.9 x 4.6 x 4.1 cm.  No mass or obstruction is identified.

No abdominal mass or ascites is seen.

The spleen measures 8.7 x 3.8 x 3.2 cm.

**IMPRESSION:**

   UNREMARKABLE ABDOMINAL SONOGRAM.

Thank you for the courtesy of this referral.

Very truly yours,

Harvey L. Lefkowitz MD
Lucille P. Taverna MD

HLL:cp
(STAIR)

RECEIVED 6/10/10

*Diplomate, American Board of Radiology
†Fellow, American College of Radiology
‡Fellow, Society of Cardiovascular and Interventional Radiology

Radiological Associates of Long Island PC
Diagnostic Medical Imaging Facility · 75 S

## Denise Sekur

| | |
|---|---|
| **From:** | Denise Sekur |
| **Sent:** | Monday, August 09, 2010 10:12 PM |
| **To:** | James Metzger |
| **Subject:** | Attendance |

Dear Jim

Diana informed me of your dismay regarding my attendance, so I thought it was my responsibility to explain my personal situation to you, as I am not sure of what you are told.

It first started with a breast cancer scare on 12/31/09, I had to go to an oncologist and undergo a lot of testing. Thank goodness it turned out not to be cancer. Then in March 2010 I came down with the flu and was out for a week. Twelve days later I was rushed to the hospital for an appendectomy, which clarified that I had appendicitis and not the flu. I took a week off and then came back. I didn't take lunch the following week and stayed between 2:30 and 3:30 as it was difficult to sit with all of the incisions. (I believe I may have even been docked for that) While all of this was going on I was having other female issues, which doctors felt may have something to do with all that was going on.

In July I was experiencing extreme abdominal pain, and it turned out that I had an infection from my IUD, which I had done right before my return back from maternity to Whitmore. For as much difficulty as I was having with it monthly, I didn't want to believe that this could be the cause of a lot of issues going on. But I wouldn't part with it. When things got really bad I had to have it removed on 7/14/10, and an infection was confirmed. That would help to explain the fevers every month, or maybe not. Most people are hospitalized for a pelvic infection. I was lucky enough to treat at home. I used two days for this.

In addition to that, I had an infected oral implant for over a year. It took three opinions and all that time for the infection to finally show on an x-ray. Needless to say, I had to have it removed, which happened on 8/2/10. I took pain killers and antibiotics and came to work the following day. I finally couldn't handle it anymore and left a bit early. I had to wear a lower dental appliance in my mouth for the next 24 hours. On the evening of 8/3/10, I was able to remove the plate and when I woke up the following morning the underside of my tongue had swelled and I was not able to speak. I went into my un air-conditioned spare room and E-Mailed Diana, explaining the situation and answered e-mails all day, since I couldn't physically speak with anyone. The following day the swelling had gotten better but it was still on the excruciating side, so I e-mailed Diana, yet again, and advised that I will continue to work from home but today I would be able to make a few calls. This turns out to be the day you were upset. When I arrived miserable on Friday, Diana scolded me about this issue stating that I am taking advantage and other people want to know why I get more than 20 days off. My response to her was "People are envious of me being sick?" "I'm envious that on their days off they are running and playing." I am not referring to indigestion or the common cold, that would be taking advantage. I was also told that if I call in again, it can't be guaranteed that I won't be terminated for this. So as you see, I had to take time to write this.

As my amazing luck would have it, I had to go for a biopsy on my lunch hour that day, for yet another breast cancer scare. If the results are unfavorable, I will inform you right away, and take disability if need be,. I'm praying that won't happen. These are big ticket items. I've had a rough year thus far. I haven't been on a vacation in 4 years. I'd give anything for one of those days off to have included some fun. I gave Diana a note of apology, and I am sorry if I upset you, I certainly didn't mean for this to happen. Feel free to share this letter with George or Diana, if you'd like. In fact, George and Diana have been told every detail in this letter. I had to be explicit and reveal my personal business just so they would know that these things were beyond my control. Please feel free to ask me anything regarding this matter.

Thank you, I appreciate that you took the time to read my letter

Sincerely,
Denise Sam-Sekur . . . . . . .

10/28/2010

**Denise Sekur**

| | |
|---|---|
| From: | James Metzger |
| To: | Denise Sekur |
| Sent: | Monday, August 09, 2010 10:15 PM |
| Subject: | Read: Attendance |

Your message

| | |
|---|---|
| To: | James Metzger |
| Subject: | Attendance |
| Sent: | 8/9/2010 10:12 PM |

was read on 8/9/2010 10:15 PM.

10/4/2011

Dear Ms. Vukovich —
Thank you so much
for your help.

Sincerely,
Denise Sam-Soo
(570) - 426 - 6856

1





EP-13C

RECEIVED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D...

★ JAN 29 2013 ★

LONG ISLAND OFFICE

When used internationally
affix customs declarations
(PS Form 2976, or 2976A).

Please
Recycle

---

**TIMELY URGENT**    *Please Rush To Addressee*

...at usps.com

EXPRESS
MAIL
UNITED STATES POSTAL SERVICE®

Addressee Copy
Label 11-B, March 2004

Post Office To Addressee

FOR PICKUP OR TRACKING
Visit **www.usps.com**
Call 1-800-222-1811